THE PRESIDENT, DIRECTORS AND COMPANY OF THE
FARMERS' BANK OF MARYLAND vs. ELIZABETH
THOMAS, RICHARD H. MILES and WILLIAM A.
LYON, Terre-Tenants of HENRY W. THOMAS.

*Pleading—Scire Facias to revive a Judgment—Demurrer—
Judgment Lien—Vendor's Lien—Practice in Equity—How
a person may become a Party to Proceedings in Equity—
Who may not impeach the Validity of a Decree in Equity—
Purchaser under a Decree in Equity.*

To a *scire facias* issued against the terre-tenants of T. to revive a judgment
recovered against him by the plaintiffs, it was pleaded that before the issuing
of the *scire facias* one of the defendants filed a bill in Equity to enforce a
vendor's lien which she held and claimed against all the real estate of T.;
that said lien had existed and attached long before the obtention of the
plaintiffs' judgment; that said T. appeared and answered the bill, and a
decree was passed for the sale of said real estate, and the same was sold by a
trustee appointed by the Court, and bought and paid for by the defendants,
to whom it was duly conveyed. To this plea the plaintiffs replied, admit-
ting the proceedings in Equity to sell the real estate of T., as stated in the
plea, but averring that they were not made parties to such proceedings;
They denied that the complainant in the Equity suit held a vendor's lien on
*all* the real estate of T., and averred that their judgment recited in the *scire
facias* was a lien upon his real estate which was purchased by the defend-
ants. To this replication the defendants demurred. HELD:

That as the defendants by their demurrer admitted that the plaintiffs were not
made parties to the proceedings in Equity, and that the vendor's lien did
did not attach to *all* the real estate of T., the decree and sale thereunder did
not operate as a bar to the *scire facias*, and the defendants' demurrer to the
plaintiffs' replication could not be sustained.

A person may become a party to proceedings in Equity and be bound thereby,
by appearing to the suit and filing his claim, and having an opportunity of
sustaining it by evidence, and of appealing from the order of the Court in
regard thereto.

A party who comes into Court seeking payment of his claim out of the pro-
ceeds of land sold under a decree, will not be allowed to impeach the validity

of the decree in a subsequent proceeding; nor will he be permitted to enforce the payment of the same claim against the land in the hands of a purchaser.

APPEAL from the Circuit Court for St. Mary's County.

At March Term, 1864, of the Circuit Court for Saint Mary's County, the appellants recovered a judgment for $1,250, with interest from the 27th of August, 1861, against Henry W. Thomas and others. To revive this judgment, the appellants, on the 3d of March, 1870, sued out a *scire facias* which was made known to the appellees as *terre tenants* of the said Henry W. Thomas. A further statement of the case will be found in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, ALVEY and ROBINSON, J.

*Alexander Randall,* for the appellants, argued that the judgment should be reversed,

*First.*—Because the facts admitted by the defendants' demurrer to the plaintiffs' replication to the second plea of the defendants *show,* that the plaintiffs, in their original judgment against Henry W. Thomas, had thereby a lien on *a portion* of his real estate, and were proceeding to revive this judgment against the defendants as the *terre-tenants* of said Thomas, by this "*scire facias,*" who were claiming to hold this real estate by a purchase under a subsequent decree of a Court of Equity against said Henry, passed to sell *other* real estate of said Henry, on which the complainant had a *vendor's lien,* and to which decree, &c., the plaintiffs were not made parties, and that therefore the plaintiffs were entitled to a "*fiat*" against these *terre-tenants* or some of them, in respect to so much of this real estate on which the plaintiffs' judgment *was a lien,* and on which the complainant in the

Equity suit had no vendor's lien, and which she had no right to sell under this decree.

*Second.*—Because the facts admitted by the defendants' demurrer to the plaintiffs' replication to the third plea of the defendants show, that though the defendants were purchasers of *portions* of the real estate of the defendant Henry W. Thomas, in the original judgment, under a decree in Equity against him to enforce the payment to the complainant therein of a vendor's lien *on part* of the real estate of said Thomas, yet, *all* his real estate not being subject thereto, and particularly *a portion thereof* on which the plaintiffs' original judgment was a lien, that therefore the plaintiffs were entitled to a *"fiat"* against these *"terre-tenants,"* the defendants, in respect to this *part* of the real estate of Henry W. Thomas, on which the plaintiffs' judgment was a lien, and on which there was no vendor's lien.

*Third.*—Because the *general judgment* of the Court below for the defendants, is contradictory of and inconsistent with the judgment of the Court for the plaintiffs, (and to which the defendants submitted—not having objected thereto :)—*first*, with that judgment of the Court below on the first plea of *"nul tiel record,"* thereby reviving the plaintiffs' original judgment against Henry W. Thomas, which existed before the decree in the Equity suit ; *second*, with the other judgment of the Court below sustaining the plaintiffs' demurrer to the 3rd plea of Miles, and to the 4th plea of Elizabeth Thomas and Lyon, which thereby decided, that though the plaintiffs had notice of the proceedings in the Equity suit, and had become a party thereto after the decree and sale therein, by appearing and filing their claim as a creditor of Henry W. Thomas upon the judgment recited in the *"scire facias,"* and seeking payment thereof out of these proceeds of sale, and that although the defendants have no other land which ever was possessed by the said Henry,

except those as aforesaid purchased and paid for by them—yet, that the lien 'of the said original judgment of the plaintiffs on the said real estate was not wholly cleared or extinguished thereby.

The bill filed by Elizabeth Thomas against Henry W. Thomas, referred to in this cause, being simply to enforce her vendor's lien, and having no common interest with the other creditors of Henry the debtor, will not be treated as a creditor's suit, and does not implicate the rights of other creditors. *Ellicott vs. Welch,* 2 *Bland,* 242; *Hammond vs. Hammond,* 2 *Bland,* 306.

In the case of a creditors' bill, all creditors and others interested may be made parties—all the estate of the debtor is sold, the proceeds brought into Court and paid off to all creditors, and the estate finally settled up as to all interested; but not so on such a bill as this, by vendor against vendee. So in the case of mortgagee against mortgagor, prior incumbrancers need not be made parties—their titles are not sold. *Brooks vs. Brooke,* 12 *G. & J.,* 318.

None but parties are bound by such a decree as this, between vendor and vendee, and the appellant, standing in no such relation, cannot be bound thereby. *Tongue vs. Morton,* 6 *H. & J.,* 24; *Brooks vs. Brooke,* 12 *G. & J.,* 307.

A Court of Equity sells only the interests of the parties to the cause, (by the express words of all the forms of such decrees,) and the rule "*caveat emptor*" applies to all such sales, and they are made subject to the incumbrances on the land sold. *Farmers' Bank vs. Martin,* 7 *Md.,* 342; *Bolgiano vs. Cooke, &c.,* 19 *Md.,* 375; *Duvall vs. Speed,* 1 *Md. Ch. Dec.,* 229; *Cockey vs. Milne's Lessee,* 16 *Md.,* 207; *Martin vs. Martin,* 7 *Md.,* 368.

Henry W. Thomas being seized of one-fourth of the real estate descended to him and his brothers and sister, purchased from his sister one-third of her one-fourth,

thereby holding one-third of the entire land descended ; on this one-third of one-fourth—that is, one-twelfth of the entire estate, Elizabeth Thomas had a vendor's lien when the plaintiffs' judgment was recovered against Henry W. Thomas, which became a lien on his *entire one-fourth which descended to him*—and this lien has never in any manner been released, nor has the judgment been paid. The proceeding instituted by Elizabeth Thomas, was to enforce *her vendor's lien* by the sale of the land she sold to Henry—nothing else. She could, therefore, obtain a decree for only what she sold him—that was, *one-fourth* of the land ; any other land he held, on which the plaintiffs had a lien, could not be sold ; the Court had no jurisdiction to sell more than that on which the *vendor had a lien*, and any such sale would be void and be set aside. *Johnson and Wife vs. Robertson and Pearre*, 34 *Md.*, 175.

The Court of Equity *did not and could not* sell *the whole* of the land of Henry W. Thomas. The facts, as they stand admitted by the pleadings, show, that only a part of this land, *one-fourth thereof*, was sold, and there is no evidence to show that the Court, by its decree, ever *intended* to allow *more* to be sold. But if such had been the decree, it would have been inoperative as against these plaintiffs.

*J. Shaaff Stockett* and *Frederick Stone*, for the appellees.

The judgments or decrees of a Court of competent jurisdiction, coming incidentally or collaterally in question, are conclusive, and cannot be impeached upon the ground of informality in the proceedings, or of mistakes by the Court in the matter adjudicated. The decision of a Court of competent jurisdiction, upon a matter properly within the scope of its jurisdiction, whether correct or not, is, until reversed, binding upon the Court rendering it and every other Court, and can never be attacked or im-

peached collaterally.    If errors be committed, they must
be corrected by appeal, bill of review or some other *direct*
proceeding.    The Circuit Court for Saint Mary's County,
in Equity, a Court of competent jurisdiction, having de-
cided that the vendor's lien of Elizabeth Thomas covered
the *whole* land of Henry W. Thomas, the correctness of
that decision cannot be inquired into in this proceeding.
*Powles, et al. vs. Dilley, et al.*, 9 *Gill*, 222, 241; *Ranoul
vs. Griffie*, 3 *Md.*, 54, 60; *Clark & Jackson vs. Bryan &
Lunt*, 16 *Md.*, 171, 176; *Elliott, et al. vs. Piersol, et al.*,
1 *Peters, S. C.*, 340; *Cockey vs. Cole*, 28 *Md.*, 284.

The judgment of the plaintiffs having been rendered
subsequently to the attachment of the vendor's lien, it
was not necessary that the plaintiffs should be made par-
ties to the proceedings to enforce the lien.    They were
bound to seek payment out of the surplus of the proceeds
of sale in the hands of the trustees, if any such existed;
and they cannot follow the land into the hands of the
purchasers.    As at law, the sale by the sheriff, under
the elder judgment, conveys the title, and the holders
of the junior judgments must look to the fund, so in
equity the sale to enforce the elder lien conveys the title,
and the holders of the junior liens must look to the fund
in the hands of the trustees.    Courts of Justice guard
with jealous vigilance the rights of purchasers under
judicial sales.    *Murphy vs. Cord*, 12 *G. & J.*, 182; *Elliott
and Wife's lessee vs. Knott*, 14 *Md.*, 134, 135; *Brawner
vs. Watkins*, 28 *Md.*, 217.

Bills to enforce a vendor's lien are in the nature of
bills for the specific performance of a contract, and only
the parties to the contract are necessary parties to the
proceeding.    *Barroll's Chancery Practice*, 78, 80; *Crook
and Wife vs. Brown, et al.*, 11 *Md.*, 158; *Elysville Manf.
Co. vs. Okisko Co.*, 5 *Md.*, 152.

Admitting that the judgment of the appellants was a
lien on the real estate of Henry W. Thomas, that lien

was subordinate to the vendor's lien which had existed and attached long before, and which the Circuit Court by its decree decided attached to the *whole* of the estate. And any proceeding which the appellants might have seen fit to institute to enforce their judgment lien, could only have been prosecuted in subordination to the senior lien of the vendor. The appellants do not present the case in its proper light when they assert the priority of their judgment lien—their judgment may be older than the decree under which the property was sold, but it is junior to the vendor's lien which attached nearly twenty years ago—the decree relates back to this lien—the appellants are therefore junior incumbrancers; and the cases of *Duvall vs. Speed,* and *Brooks vs. Brooke,* relied on by the counsel for the appellants, do not apply.

Those cases held that *prior* incumbrancers, not parties to the bill, were not bound to seek payment of their claims out of the proceeds of sale ; and if not paid, might prosecute their liens against the purchasers. Suppose the appellees had held a judgment of the same date as the vendor's lien, against Henry W. Thomas, or a mortgage, and the property had been sold under execution, or under a decree to foreclose, could the appellants have successfully prosecuted their claim against the purchasers?

There is a fatal objection to the replication of the plaintiffs, and the judgment on the demurrer should be for the defendants. The replication is *bad for uncertainty,* and final judgment for the plaintiffs could not be executed. The uncertainty consists in this, that the replication only claims that a *part of the real estate* of Henry W. Thomas in the hands of the defendants is liable to the lien of their judgment. But they do not say or claim *what part,* whether a fourth, fifth, sixth, or one hundredth part.

The plaintiffs do not claim in their replication that their lien is on the whole of the real estate of Henry W.,

now in the hands of the defendants, but only claim that it exists on *part*, but what part, is left entirely to conjecture. In all cases of *scire facias* against *terre tenants*, the land must be described with sufficient certainty to enable the sheriff to levy upon it under a *fi. fa.*, and sell it. The judgment of the Court against the *terre tenant* is, that the plaintiff shall have the amount of his judgment levied upon certain land in the hands of the *terre-tenant*, *naming and describing the land with sufficient accuracy* to identify it. 2 *Evans' Harris*, 364 *and* 365.

The land sought to be made liable in the hands of the *terre-tenants*, for the debt due the plaintiffs, must be described with reasonable certainty, either in the writ itself, the return of the sheriff to the *scire facias*, or in some of the subsequent pleadings. If there be no description whatever of the land in either the writ, return, or subsequent pleadings, how can judgment possibly be rendered for the plaintiffs? In the case at bar, there is no description whatever of the land in either the writ, return, or pleadings; the land may be one or one thousand acres. It may be black acre, lying at Point Lookout, or white acre, lying at Charlotte Hall. *Mitchell vs. Williamson*, 6 *Md.*, 218.

ROBINSON J., delivered the opinion of the Court.

A *scire facias* was issued against the appellees, as *terre tenants* to revive a judgment recovered by the appellants against Henry W. Thomas.

The appellees severed, but pleaded substantially the following pleas:

1st. *Nul tiel* record.

2nd. That before the issuing of the *scire facias*, the defendant, Elizabeth Thomas, filed a bill in Equity to sell the land of Henry W. Thomas, to enforce a vendor's lien, which she held against all the real estate of the said Henry; that said lien had existed and attached

long before the rendition of the plaintiffs' judgment, that said Henry appeared to said suit, and a decree was passed for the sale of said real estate, that the same was sold by a trustee appointed by the court, and bought, paid for, and conveyed to the defendants.

3rd Plea. That the plaintiffs had notice of the suit in Equity, and after the decree and sale thereunder, became parties by appearing and filing their claim as creditors of the said Henry W. Thomas, upon the judgment recited in the *scire facias*, and seeking payment thereof, out of the proceeds of sale, &c.

To this third plea of the defendant Miles, and which is the fourth plea of the other defendants, the plaintiffs demurred, and the Court sustained the demurrer.

To the second plea of the defendant Miles, and to the second and third pleas of the other defendants, the plaintiffs filed a replication, in which they admit the proceedings in Equity to sell the real estate of H. W. Thomas, as stated in said pleas, but say they were not made parties to said proceedings; they deny that the complainant in said Equity suit, had a vendor's lien on *all* the real estate of the said Henry, and aver that their judgment recited in the *scire facias*, was and is a lien upon his real estate situate in St. Mary's County, and which was sold under said proceedings, and purchased by the defendants.

To this replication, the defendants demurrred, and it is from the judgment of the Court sustaining the demurrer, and the general judgment entered for the defendants, that this appeal is taken. It thus appears by the pleadings, that the judgment recited in the *scire facias* was recovered against the said Henry W. Thomas, prior to the filing of the bill to enforce the vendor's lien; that the plaintiffs were not made parties to said proceeding, and that the said vendor's lien did not attach to all the real estate of the said Thomas, sold under the decree, and

purchased by the defendants. The question then is, whether the defendants can plead the decree of the Court passed in said cause, and the sale thereunder, as a bar to a *scire facias* on said judgment, brought by the plaintiffs against them as *terre tenants* of the said Henry W. Thomas?

The well settled rule of law, that a judgment of a Court of competent jurisdiction, coming incidentally in question, or offered as evidence of title, cannot be impeached on the ground of informality in the proceedings, or mistake of the Court in the matter decided, relied on by the counsel for the appellees, we do not understand as being questioned by the other side. But there is a wide distinction between offering a judgment in evidence, as a muniment, or link in the chain of title, and pleading it as a bar or an estoppel to the right of a party to maintain his action. When offered in evidence, say the Court, in *Barney vs. Patterson*, 6 *H. & J.*, 182, the judgment is not binding *per se*, it is merely evidence of title or the right to maintain the suit, but when pleaded in bar, or relied on as an estoppel, the party whom it affects, is not permitted to aver against it, or offer evidence to controvert it. In the latter case, the effect and operation of the judgment does not come incidentally in question, nor is it offered as evidence of title, but it is set up and relied upon as conclusive *per se* of the matter in controversy. No one questions the well settled rule, that when a case has once been fairly tried and determined, the judgment rendered therein is final and conclusive, as between the *parties* and their *privies* touching the matter in controversy, but it is equally true also, that such a judgment cannot bind or affect the rights of third parties, strangers to the record. It can hardly be necessary to say, that every man is entitled to his day in Court, and that only such persons, who in some manner recognized by the forms of law, become parties thereto, are bound by its proceedings.

That sales of land under decrees in Equity, are not exempt from the operation of this rule, must be considered as settled in *Brooks vs. Brooke, et al.*, 12 *G. & J.*, 306, *Cockey vs. Milne's Lessee*, 16 *Md.*, 207, and other cases in this Court. We are unable to distinguish in principle the case of *Cockey vs. Milne's Lessee*, from the one before us. There the appellant offered in evidence a decree of a Court of Equity, on a bill to foreclose a mortgage, and sale thereunder, prior in point of time to the proceedings in attachment, and judgment and sale under which the appellee claimed. As against the appellee, the purchaser of the land at sheriff's sale, the mortgage was not binding, because it was defectively acknowledged. The appellant however claimed that the appellee was concluded by the decree in Equity, and sale thereunder, but the Court say : "The title of the appellee acquired under the proceedings in attachment was good against any title asserted under the mortgage, and was in no manner affected by the proceedings in chancery under which the appellants' title was acquired. The appellee was not a party to those proceedings, and his right was not in any manner bound or affected thereby."

In *Sugden on Vendors and Purchasers*, 111, it is said : "Where the Court sells, it will protect the purchaser against the parties to the suit, and all persons coming in under the decree. But a person having a legal lien as a judgment creditor, not coming in under the decree, would not be bound by it, and might proceed against the purchaser."

As to the hardship resulting from the application of this principle to the purchasers under the decree, it may be replied that the plaintiffs' judgment was a matter of record, and notice to the world. It was a lien upon the real estate of the debtor, which could be enforced by execution and sale of the property. If the proceedings in equity were intended to affect this lien, and to sell a

disencumbered title, the judgment creditors ought to have been parties thereto. They had a direct interest in the real estate to be sold under the proceedings, and the right to know the extent of the vendor's lien and the amount due thereon. If, however, they were not made parties, it is very clear that the purchasers under the decree .acquired only the *right, title and interest* of the *parties to the suit.* *Bolgiano vs. Cook,* 19 *Md.,* 375; *Farmers' Bank vs. Martin,* 7 *Md.,* 342; *Sugden on Vendors and Purchasers,* 521, *(Ed. 14th.)*

We are of opinion, therefore, that the decree relied on in this case does not operate as *a bar* to the *scire facias* issued by the plaintiffs, and made known to the defendants as *terre tenants* of Thomas, and that the Court erred in sustaining the demurrer to the replication.

The third and fourth pleas of the defendants, however, say that the plaintiffs had notice of the proceedings in Equity under which the land was sold, and became parties, by appearing therein and filing their claim, as creditors of the said Thomas, upon the judgment recited in the *scire facias,* and by seeking payment of the same out of the proceeds of sale. The question raised by these pleas is whether the facts therein stated are sufficient to constitute the plaintiffs parties to the proceedings in Equity under which the land was sold and the proceeds arising therefrom distributed.

Ordinarily, where a person interested in a suit in Equity desires to become a party thereto, the proper course would be to file a petition setting forth the grounds upon which his claim is based. This, however, is not absolutely necessary, and it will be sufficient, if it appears from the record that he has appeared to the suit, and filed his claim, and had an opportunity of offering evidence in support of the same, and of appealing from the order of the Court in regard thereto. A party who comes into Court seeking payment of his claim out of

the proceeds arising from the sale of land sold under a decree, will not be allowed to impeach the validity of the decree in a subsequent proceeding, nor will he be permitted to enforce the payment of the same claim against the land in the hands of a purchaser. In *Lanahan, et al. vs. Latrobe,* 7 *Md.*, 268, it was held that a creditor who participates in a proceeding in Equity for the distribution of the proceeds of property sold under a deed of trust, so far makes himself a party as to waive his right afterwards to object to the validity of the deed. As we have heretofore said, the appellants were not bound by the decree under which the land was sold, because they were not made parties to the suit. They could have stood out and have enforced the payment of their judgment as against the land in the hands of the purchasers, provided their lien was superior to that under which the property was sold. But if, instead of doing this, they voluntarily became parties to the proceedings under which the land was sold, and sought payment of their claim out of the purchase money paid by these appellees, every principle of Equity and good faith requires that they should be estopped from afterwards enforcing payment of the same as against the land. If the Court erred in rejecting their claim, the remedy was by an appeal.

From the judgment of the Court below, sustaining the plaintiffs' demurrer to these pleas, no appeal was taken, but inasmuch as the defendants have been deprived of the right of making the defence therein set forth, we shall, in reversing the judgment on the demurrer to the plaintiffs' replication, order a new trial in conformity with sec. 16, Art. 5, of the Code.

*Judgment reversed*
*and new trial awarded.*

(Decided 29th January, 1873.)